UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT MCKENDRICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16-CV-584 PLC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Scott McKendrick (Plaintiff) seeks review of the decision of the Social Security Commissioner, Nancy Berryhill, denying his application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.[1] Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

*I.    Background and Procedural History*

In July 2013, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income. (Tr. 180-87, 188-93). Plaintiff, born on May 11, 1983, alleged disability beginning October 3, 2008 as a result of a motor vehicle accident. (Tr. 180-87, 188-93). The Social Security Administration (SSA) denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 22-35). The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing on October 1, 2014. (Tr. 22). In a decision dated December 4, 2014, the ALJ determined that Plaintiff "has not been under a

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).

1

disability, as defined in the Social Security Act, from October 3, 2008, through the date of this decision[.]" (Id.).

In her decision, the ALJ applied the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920[2] and found that Plaintiff had the severe impairments of "status post multiple fractures of the upper and lower extremities, status post open reduction and internal fixation and fusions; right knee quadriceplasty; arthroscopic debridement; left femoral head avascular necrosis; and post traumatic osteoarthritis." (Tr. 24-25). The ALJ determined that Plaintiff had the residual functional capacity (RFC) to:

> Lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally; stand and/or walk for up to 2 hours out of an 8-hour workday; and sit for up to 6 hours out of an 8-hour workday. He requires an ability to alternate between sitting and standing at least every 30 minutes. He should never climb ladders, ropes, or scaffolds and he should never balance, kneel, crouch, or crawl, but he can occasionally climb ramps and stairs and occasionally stoop. He can frequently reach with his left extremity. He must avoid all environmental exposure to extreme cold, wetness (as it relates to weather conditions), excessive vibration, operational control of moving machinery, unprotected heights, and hazardous machinery.

(Tr. 26-32). Finally, the ALJ concluded: "[C]onsidering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform." (Tr. 34).

Plaintiff requested review of the ALJ's decision and submitted additional evidence to the SSA Appeals Council, which denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has

---

[2] To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

2

exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. *Standard of Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## III. *Discussion*

Plaintiff claims that the ALJ erred in (1) failing to properly weigh his treating physician's opinion; and (2) creating an RFC determination that did not include all of Plaintiff's limitations.[3] (ECF No. 16). The Commissioner counters that the ALJ properly (1) evaluated the medical opinion evidence; and (2) formulated an RFC based on substantial evidence. (ECF No. 21).

   A. *Treating Physician's Opinion*

Plaintiff argues that, because Dr. Crist was his treating physician, his medical opinions are entitled to controlling weight. In response, the Commissioner asserts that the ALJ properly determined that Dr. Crist's medical opinions were inconsistent with his treatment notes and the record as a whole.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008) (quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Id. (quoting Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)). See also Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

On October 3, 2008, Plaintiff sustained serious injuries in a motor vehicle accident and paramedics airlifted him to the emergency room at the University of Missouri Hospital. (Tr.

---

[3] For ease of analysis, the Court will address Plaintiff's arguments out of order.

259). Doctors diagnosed Plaintiff with multiple fractures to his extremities and vertebrae and performed multiple surgeries, during which they also discovered that Plaintiff had a small myocardial contusion. (Tr.305, 279). On October 28, 2008, after three weeks in the hospital, Plaintiff's doctors discharged him to Rusk Rehabilitation Center. (Tr. 402).

On November 6, 2008, Plaintiff followed up at the hospital's neurosurgery clinic and reported no cervical discomfort and little extremity discomfort. (Tr. 569-570). Dr. Brett Crist, a primary care physician, began treating plaintiff in November 2008. (Tr. 591). When Plaintiff returned to the neurosurgery clinic in January 2009, he was "feeling well" and "progressing with the healing of his multiple fractures." (Tr. 622). Plaintiff reported no neck discomfort, "good strength in both upper extremities," and was "progressing in his ability to ambulate with crutches." (Tr. 622-23). In May 2009, Plaintiff's "main complaint was limitation of range of motion in the right knee secondary to significant heterotopic ossification formation in the right quadriceps." (Tr. 532-33).

On October 5, 2009, Plaintiff underwent arthroscopy of the right knee and right quadriceps plasty. (Tr. 533-34). Prior to surgery, Plaintiff reported "limited range of motion preventing him from being able to flex the knee any significant amount," but he was "otherwise working about 40 hours a week and his pain is well controlled." (Tr. 533). Two days after the procedures, Dr. Crist discharged Plaintiff with few restrictions. (Tr. 555). On December 8, 2009, Dr. Crist reported that, after undergoing some physical therapy, Plaintiff was "…essentially doing all activities that he want[ed] to do." (Tr. 567). From November 2009 through June 2010, Plaintiff's physical examinations were normal. (Tr. 680-710).

5

Plaintiff did not resume care until July 2014, nearly five years later.[4] (Tr. 790). Dr. Crist completed a medical source statement (MSS) on July 25, 2014, in which he stated that Plaintiff required five to ten unscheduled breaks per day for thirty minutes each. (Tr. 731-33). He also found that Plaintiff was limited to "low stress work" and suffered from "bad days" that would require him to miss work at least four times per month. (Tr. 731-33). Dr. Crist opined that Plaintiff: could frequently lift and/or carry ten pounds and rarely handle twenty pounds; could not perform most postural movements; could stand for a total of two hours and sit for at least six hours out of an eight-hour workday; would need to shift positions at will from sitting, standing, or walking; and did not require an assistive device. (Tr. 731-33).

The ALJ considered Dr. Crist's MSS and afforded it "some weight because the nature of the claimant's impairments do warrant some limitations." (Tr. 32). However, the ALJ gave "very little weight" to Dr. Crist's conclusion that Plaintiff would miss four days of work per month "because it is without substantial support from the other evidence of record, including, but not limited to, the claimant's activities of daily living[.]"[5] (Id.). The ALJ further discredited Dr.

---

[4] In December 2013, Plaintiff presented to the emergency room with burns to his abdomen, arms, and thighs. (Tr. 774-778). Plaintiff reported that "he was setting up a firework type bomb that involves a plastic bag of oxygen and acetaline [sic] when ignition lit before he cleared the area[.]" (Tr. 774).

[5] The ALJ summarized Plaintiff's activities of daily living as follows:
> The claimant has described his every day activities, which include taking care of his own personal needs and grooming, doing odd jobs in the morning, driving an automobile, socializing, shopping, and handling his own finances, doing dishes, laundry and taking out the trash. On occasion, he hunts, fishes and bike rides. He also burned himself in December of 2013, in the process of setting up a large fireworks-stand. . . . [H]e has lived in a second floor apartment since 2009, and while his mother does some household chores, the claimant sweeps, vacuums and cooks sometimes. The claimant also testified that he can sit for two hours without needing to get up.

(Tr. 31) (internal citations omitted).

Crist's opinion because he "does not have [a] severe medically determinable impairment that would necessitate the need for low stress work." (Id.).

"A treating physician's opinion is not automatically controlling and may be discredited when other medical opinions are supported by better medical evidence or when the physician gives inconsistent opinions." Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (internal citations omitted). In this case, the ALJ found that Dr. Crist's treatment notes, as well as those of Plaintiff's other treating physicians, did not support the functional limitations Dr. Crist identified in the MSS. For example, in December 2009, Plaintiff informed Dr. Crist that he was "doing fairly well" and "is essentially doing all activities that he wants to do." (Tr. 567). Based on Plaintiff's medical records, he did not require orthopedic care from June 2010 until July 2014. Furthermore, Plaintiff described a relatively active lifestyle. After reviewing Plaintiff's records, the Court finds that the ALJ did not err in affording "some weight" to Dr. Crist's opined limitations but "very little weight" to his conclusion that Plaintiff would miss four days of work per month.

Plaintiff contends the ALJ failed to provide "good reasons" for assigning "very little weight" to Dr. Crist's opinion that Plaintiff's "bad days" would require him to be absent from work more than four times per month. The opinion of the treating physician should be given great weight only if it is based on sufficient medical data. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). Here, Dr. Crist's conclusory opinion regarding absenteeism is not entitled to great weight as it is inconsistent with his treatment notes and other, uncontroverted objective medical evidence of record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Prosch v., 201 F.3d at 1013.

7

In support of his position that the ALJ erred in discrediting the treating physician's opinion because it was inconsistent with his activities of daily living, Plaintiff cites <u>Leckenby v. Astrue</u>, 487 F.3d 626, 633 (8th Cir. 2007). There, the Eighth Circuit remanded the case because the plaintiff's daily activities, such as some laundry, shopping, cleaning, and preparing her children for school, were not inconsistent with her complaints of disabling pain. <u>Id.</u> at 634. <u>Leckenby</u> is inapposite because that plaintiff's daily activities were significantly more limited than Plaintiff's. Indeed, Plaintiff's medical records reflect that he was able to set up fireworks in December 2013. Upon review of the record, the Court finds that the ALJ properly evaluated Dr. Crist's medical opinion and provided "good reasons" for partially discrediting it.

 *B. RFC*

Plaintiff claims that the ALJ's RFC assessment was not supported by substantial evidence because it did not include all of the limitations supported by Plaintiff's medical records. More specifically, Plaintiff contends that the ALJ erred because she neither incorporated Dr. Crist's opinion that Plaintiff would require five to ten unscheduled, thirty-minute breaks per work day nor provided "good reasons" for her decision not to include that limitation. (ECF No. 16). The Commissioner counters that, in determining Plaintiff's RFC, the ALJ properly accounted for those functional limitations that were well-supported and consistent with the record as a whole. (ECF No. 21).

RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). <u>See also</u> <u>Masterson v. Barnhart</u>, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's

own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (quotation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox, 495 F.3d at 619). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. Furthermore, "in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox, 495 F.3d at 619.

As previously discussed, the ALJ assigned "very little weight" to Dr. Crist's conclusion that Plaintiff would miss four days of work per month, but he gave "some weight" to the rest of Dr. Crist's opinion. Despite giving Dr. Crist's opinion "some weight," the ALJ did not include in the RFC a need for five to ten unscheduled, thirty-minute work breaks. However, the ALJ did include a thirty-minute sit/stand option.

As an initial matter, the Court finds that the ALJ did not err in failing to assess Plaintiff's RFC on a function-by-function basis. See, e.g., Benson v. Colvin, 4:14-CV-0422-DGK-SSA, 2015 WL 4610988, at *4 (W.D. Mo. July 31, 2015). The ALJ thoroughly reviewed the testimony and medical records, identified Plaintiff's severe impairments, and explained his limitations in detail. See McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation.").

Moreover, the record did not support a finding that Plaintiff required five to ten unscheduled, thirty-minute breaks per day. Dr. Palmer, the consulting physician, opined that Plaintiff "can be expected to sit normally during an eight-hour work day. Standing and walking

9

would be limited for this claimant due to the claimant's right leg and severe limp." (Tr. 724-25). Plaintiff's testimony also suggested a need for fewer and shorter breaks than Dr. Crist's MSS. Specifically, Plaintiff testified that he could: (1) stand forty to forty-five minutes before needing to sit for about ten minutes; and (2) sit for two hours at a time. To the extent that the ALJ gave Dr. Crist's opinion "some weight," he accommodated Plaintiff's need for extra breaks by including a thirty-minute sit/stand option. Based on the administrative record, the ALJ did not overlook any of Plaintiff's alleged limitations and substantial evidence supported the RFC.

### *III. Conclusion*

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th Day of March, 2018